Here ye, here ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Mary S. Shostock presiding. If you could be seated, gentlemen. You can call the case. Your Honor, the second case in the Dodgers-Smallies, 2-22-0408. Doreen Helenu plaintiff appellant v. Fox Point Homeowners Association v. Appellee. Arguing on behalf of the appellant, Mr. Terry M. Leachick. Arguing on behalf of the appellee, Mr. Steven S. Weiss. Counsel, you're ready to proceed. May it please the Court, good morning. Good morning. Again, my name is Terry M. Leachick. I'm here on behalf of the plaintiff appellant, Doreen Coletti Mews. I know the Court is familiar with the facts of the case based on the briefs that have been filed, so I will be brief in presenting. We are very familiar with the facts of the case, but you can proceed however you'd like. That's fine. As the Court knows, we're here because of injuries sustained by my client at a homeowners association function sponsored by the defendant appellee, in this case the Fox Point Homeowners Association. It was a pool party that took place on July 22nd of 2017 at the pool in the Fox Point subdivision where the plaintiff and other people live. The pool party was one of a number of functions that's sponsored by the homeowners association throughout the year for the residents there. The invitation was by email, correct? The invitation was by email and or text, if I'm not mistaken. Didn't the email contain a statement that the guests were not going to be allowed to swim? It was not supposed to be a pool party. That was the understanding. It was not advertised as a pool party. Although it was being held at the pool. Right. So how could Ms. Boyum's conduct be within the scope of her duties associated with the homeowners association? One of Ms. Boyum's duties as the organizer of the event was to ensure that the residents enjoyed themselves and had fun. And there is evidence in the case that at prior events, which were also not pool events, attendees did enter the pool. And it was something that was done and it was done with the knowledge of the homeowners association. Homeowners association officers were at these events and they knew what happened and nothing was ever done to stop it. So it's implicit that this could happen. How many times prior did these pool parties occur that weren't pool parties? Parties at the pool? Right. That I don't know. I don't know that specific number. Let me ask you, this is DeNova Review, correct? Correct. And we really should follow Gilbert, shouldn't we? I mean, in the Gilbert case, the court said that regardless of an express reservation of rights against the employer, the principal, the rule still applies that it is extinguished. The settlement. The settlement after the settlement. Yes, and that was not addressed and I did not file a reply brief on that issue. You didn't. It was raised in the response, but I can't answer your question. I think the distinction here is that. Actually, you can't make an argument you didn't make in your brief. You didn't file a reply brief. If I can respond to the court's question? Technically, am I correct? Yes, it is correct. Okay. But the question has been raised and I'll answer it. Go ahead. Thank you. So the question is, why does this, why does that not extinguish the vicarious liability claim? This, the facts in this case I believe are distinguishable from Gilbert's in that there is an independent claim against Ms. Boyum in the First Amendment complaint for her own negligence. That's what was extinguished in the settlement. There is also a claim for vicarious liability of the homeowners association for Ms. Boyum's actions. That's not extinguished by the settlement with Ms. Boyum. The settlement, that's the distinction that I can draw between Gilbert's and the facts of this case. The count three of the First Amendment complaint is against Ms. Boyum individually. Count two is against the homeowners association as the principal of Ms. Boyum for her actions. What case supports that proposition? I, despite my best efforts, I was not able to find a case that supports that. And that's probably if I was plagued with grief, right? You know, I won't make you answer that. But the questioning of Ms. Boyum, I mean, she's, the questions, I think it was in the deposition, really set out the fact that there is no vicarious liability in this case, whether there was a settlement with her or not. I mean, they asked her, did the board give you specific instructions that they wanted you to jump in the pool? No. Did anyone from the board give you instructions they wanted you to push, tackle, et cetera? No. There is just question after question that really, really says how in the world is the, what do they call them, FPHA board, how are they responsible for her behavior? How do you respond to that? The elements of liability for the principal, of the principal for the agent's actions, there are three elements. One is that the agent was acting within the scope of the employment, to use that term. The scope of the employment in this case, in this particular set of circumstances, was to benefit the homeowners association by the guests at the party enjoying themselves. That's the scope of, that's at least part of the scope of Ms. Boyum's responsibilities. Even after a guest at the party says no, I don't want to go in the pool. That's a non-contested fact. That's a non-contested fact. A difficult question to answer, Your Honor. No question about that. I would have to, in response, I would say that maybe some initial reluctance by Ms. Colletti-Mewes to entering the pool with some coaxing, maybe she would have changed her mind. However, I think that it's clear from the facts that we have in this case that the events happened relatively quickly in time. Ms. Boyum approached Ms. Colletti-Mewes. Ms. Boyum, by that time, had five, at least five drinks of vodka, mixed drinks with vodka. There's evidence that she was consuming alcohol. The number of drinks, I think, maybe. Common sense would dictate that she was probably under the influence. We can't say that, but, you know, you also had a count one, you had a negligence count, which sounds like what you're arguing, you know, right here. So the trial court grants summary judgment, grants a summary judgment motion at count one. You never appeal the grant of summary judgment on count one. The summary judgment for the homeless association. Yeah. On the negligence. The negligence. That's correct. It was not addressed in responding to the summary judgment motion. That's correct. Go ahead, I'm sorry. Again, the second element is that the homeless association would benefit from the actions of the agent, from Ms. Boyum. And the homeless association would benefit from the guests at the party having fun and enjoying themselves. There's a financial element to this, the $40 fee, but the homeless association was not in this to make money. If there was a profit, it would be rolled over and moved on and applied to the next party. That's not really the point here. The point is that the benefit to the homeless association, which essentially is made up of all the residents of the subdivision of Fox Point, is that they have fun. So if they wanted them to have fun, why wouldn't they just have a pool party? I'm sorry? If they wanted them to have all this raucous fun, why wouldn't they have just had a pool party? I think that in the past, prior to this event, there were actual pool parties where swimming was done. So it's not that that wasn't done before. This was not billed and was not intended to be a pool party where people were swimming. People were not told or encouraged to wear swim attire. No question about that. But people entering the pool at prior events that were not billed as pool parties or sponsored as pool or swimming parties didn't enter the pool. It was not something that was uncommon or hadn't happened before. And residents would have been aware of that, that that would happen. The last element for the vicarious liability is that the event occurred during the, in this case, the pool party. It was at the end of the pool party, or at the end of the party at the pool. It did happen during or while the event was still in progress. So I think all three elements are met for the vicarious liability. It needs to be met to the point that a question of fact is raised and some rejoinment was inappropriate in this case. Gentlemen, any questions? Would you like to wrap up? The only thing, again, I wanted to, I was going to address the Gilbert's issue. I'm sorry, I didn't mean to. And the settlement issue, but you did raise the question earlier. And, again, my response to that is that there's a separate claim against the Homeowners Association and a claim against Ms. Boyum. The claim against Ms. Boyum individually for negligence, that's the settlement. The Homeowners Association vicarious liability claim was not resolved in that. They were not a party to that settlement. But if the Homeowners Association is negligent, how are they vicariously liable? They're liable for the actions of their agent. Correct. I get you. And with that, unless there are other questions, that's my presentation. I don't think we have any other questions. We will have rebuttal. Thank you. Good opportunity. Thank you. Good morning. May it please the Court. State your name, please. Steve Weiss, for the record. The trial court properly granted summary judgment for the defendant, Fox Point, for three reasons. First, the negligence claim, plaintiff filed a direct negligence claim, which is what we were talking about earlier about people jumping into the pool. If the argument is we should have prevented people from going into the pool, that's direct negligence. That was never appealed. It was not contested on the trial court level. Summary judgment was granted. It was not argued in his brief. So as a result, it's waived. So the issue of whether we had independent negligence for what happened at that party, that's been waived. Second issue. So how does that affect the vicarious liability? It doesn't, but I'm just, for completeness sake, I'm saying that the issues of whether or not people should have gone into the pool or didn't go into the pool or should have been prevented from going into the pool or whether they did it at prior parties, it's immaterial here. Then we get to the Gilbert issue, the vicarious liability issue. The law is extremely clear. As the Court said, Gilbert is right on point. 1992, it's been 30 years. The reason why it's been 30 years is that if you settle, if it was a bond-yacht superior situation, if the plaintiff settles with the agent, it extinguishes the claim against the principal straightaway. It doesn't matter what the plaintiff intended. It doesn't matter what the plaintiff wrote in that release. It's over. That's what we're dealing with here. And then the third reason, as the Court brought up, is this Williams' actions were not part of her volunteer position for the association. Broadly speaking, she was there to make sure everybody at the party had a good time. Well, I don't think that's true. I don't think that's true. She was responsible for making sure there was plenty of food, that the bar was properly stocked. Plan the theme. Pick the theme. Order the band. Order the food. Order everything else. Doesn't that fall within make sure they have a good time? It does, but now we're bordering on strict liability. Anybody who's having a good time, someone gets injured, the party host is liable. That's not the law of Illinois. It's never been the law. And the interesting part is that that Parks case, that this Court ruled on in Parks, it's directly on point. It's eerie how similar the facts are. Two volunteers at a charitable event, at a party, at a beer tent, one picks up the other, they both fall down. And the same argument was made, well, the JCs, the organization is responsible for that, and the Court correctly said no. Hugging people, picking people up, shoving people to the ground, that wasn't part of the duties. So I ask that you please affirm summary judgment on behalf of Foxport. Thank you. Any questions? Thank you. Justice Kennedy, nothing. Thank you very much. Counsel, you have some time for rebuttal. No, I don't. Members of the panel, I'll leave it alone. Okay, thank you. Gentlemen, thank you so much for your interesting arguments here today. Take your jackets off before you get outside. It's a boiler today in St. Charles' Back. Thank you very much. The case will be taken under consideration. The decision will be rendered in due course. We are adjourned for the day. Thank you. Thank you.